CITY OF GRAND RAPIDS v KENT COUNTY

Docket No. 43942. Submitted January 2, 1980, at Grand Rapids.—
Decided March 5, 1980. Leave to appeal applied for.

Plaintiffs, Cities of Grand Rapids, Wyoming, Kentwood, Grand-
ville and Walker, filed a complaint in the Kent Circuit Court
alleging that the County of Kent was illegally charging them a
per diem maintenance fee for housing in its jail persons ac-
cused or convicted of city ordinance violations. Plaintiffs moved
to amend their complaint to add one taxpayer from each city as
a plaintiff. Defendant moved for summary judgment. The court,
George V. Boucher, J., denied plaintiffs' motion to amend and
granted summary judgment for defendant. Plaintiffs appeal.
*Held:*

1. At the commencement of litigation, each of the plaintiff
cities was a district control unit for a district court of the third
class or bore an analogous relation to a retained municipal
court. Since that time, each of the cities which had retained
municipal courts has voted to become a part of the district
court system and has or will become a district court unit for a
district of the third class. A county is authorized by law to
charge cities which constitute district control units of district
courts of the third class a per diem charge for expenses includ-
ing capital expenditures incurred in the safekeeping and main-
taining in the county jail of persons charged with or convicted
of violations of the ordinances enacted by those cities.

2. A prerequisite to a taxpayer's suit against a unit of
government is a threat that the taxpayer will sustain substan-
tial injury or suffer loss or damage as a taxpayer through
increased taxation and the consequences thereof. Some special
grievance must be shown. The trial court found that, at most,
the interests of the proposed taxpayer-plaintiffs were indirect,
remote and conjectural. The denial of the motion to amend did
not constitute an abuse of discretion.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 60 Am Jur 2d, Penal and Correctional Institutions § 15.
[2] 74 Am Jur 2d, Taxpayers' Actions §§ 5, 6.

1. Counties — Cities — Jails — Charging for Use of Jail.
   A county is authorized by law to charge cities which constitute district control units of district courts of the third class a per diem charge for expenses, including capital expenditures, incurred in the safekeeping and maintaining in the county jail of persons charged with or convicted of violations of the ordinances enacted by those cities.

2. Actions — Taxpayer's Suit.
   A prerequisite to a taxpayer's suit against a unit of government is a threat that the taxpayer will sustain substantial injury or suffer loss or damage as a taxpayer through increased taxation and the consequences thereof; some special grievance must be shown.

*Michael D. McGuire,* Assistant City Attorney, for the City of Grand Rapids.

*Law, Weathers, Richardson & Dutcher* (by *Robert W. Richardson* and *James E. Christenson),* for defendant.

Before: D. F. Walsh, P.J., and R. B. Burns and J. H. Gillis, JJ.

D. F. Walsh, P.J. Plaintiffs, the home rule cities of Grand Rapids, Wyoming, Kentwood, Grandville, and Walker, appeal the February 6, 1979, entry of summary judgment for defendant County of Kent. Plaintiffs also appeal denial of their motion to amend their December 1, 1977, complaint.

The parties' controversy concerns the responsibility for expenses incurred in the safekeeping and maintaining in the Kent County jail of persons who are charged with and convicted of violations of the ordinances enacted by plaintiff cities. Until 1976, defendant county and plaintiff cities discussed and agreed upon an amount to be charged plaintiffs by defendant for the lodging of city prisoners in the county jail. Since July 1, 1976, the parties have not been able to agree on the "per

diem" fee to be paid by plaintiffs to cover the confinement expenses of city prisoners in the county jail.

On December 1, 1977, plaintiffs filed a complaint seeking a declaratory judgment that the county had no legal authority, without plaintiffs' consent, to assess any charges for the maintenance, safekeeping and lodging in the county jail of persons accused or convicted of city ordinance violations. It was plaintiffs' position that any expenses so incurred were county expenses. Plaintiffs further alleged that defendant's practice of charging per diem fees to plaintiffs, while not likewise charging all other cities within the county, violated due process and equal protection principles and that the practice was unfair.

On November 3, 1978, plaintiffs moved to amend their complaint to add parties plaintiff. They sought to add as plaintiffs the mayors of each of the plaintiff cities.

The parties stipulated to the relevant facts. On February 6, 1979, the circuit court granted summary judgment to defendant, ruling that defendant was legally authorized to charge the challenged fees. In its January 11, 1979, written opinion, the circuit court based its summary judgment determination primarily on the Supreme Court's decision in *People ex rel Mixer v The Board of Supervisors of Manistee County,* 26 Mich 422 (1873).

In *Mixer,* the Supreme Court was asked to determine if Manistee County was required to pay for the confinement of persons brought to the county jail by city police officers for violation of city ordinances and of persons convicted of violating city ordinances. The Supreme Court responded as follows:

"The first class of charges, for services under the city ordinances, we think cannot be reckoned as county charges. They are in no sense services rendered to the county, and there is no statute which requires the county to pay for them. City by-laws and ordinances are entirely of local application, and are intended for local benefit. They are passed by a body independent of the county, and in whose action the county has no voice. The suppression of crime and disorder is made chargeable on the county in many cases, not so much because the county, as such, is concerned, as because the county is the division of country set apart for all ordinary jurisdiction in criminal matters, and the expenses have been usually apportioned over the region in which such courts and their juries act. But the municipal expenses of city police matters have been quite as uniformly made chargeable to the city itself, and in the absence of any statute to the contrary, such must be the rule of law." *Id.,* 424.

Plaintiffs cite MCL 801.4; MSA 28.1724 and MCL 801.8; MSA 28.1728 in support of their contention that the cost of detaining ordinance violators is a county expense. These statutes provide:

"All charges and expenses of safe-keeping and maintaining convicts, and of persons charged with offenses and committed for examination or trial, to the county jail, shall be paid from the county treasury; the accounts therefore being first settled and allowed by the board of supervisors." MCL 801.4.
"Prisoners detained for trial, and those under sentence, shall be provided with ,a sufficient quantity of wholesome food, at the expense of the county; and prisoners detained for trial, may, at their own expense, and under the direction of the keeper, be supplied with any other proper articles of food." MCL 801.8.

These statutes, however, also existed when the

Supreme Court decided *Mixer,* 1871 CL 8021, and 1871 CL 8025. But plaintiffs argue that *Mixer* is distinguishable because it was based on a theory, no longer valid, that ordinance violations were not crimes. Although the *Mixer* Court discussed the distinction between criminal cases and ordinance violations, we are persuaded that its ultimate ruling was based upon its firm conclusion that the statutes imposed liability upon the county only for the expenses of enforcing *state* laws.

"But where the prosecutions are entirely under city ordinances and by tribunals not acting under the criminal laws of the state, the question of expenses, whether the acts might or might not have been subject to prosecution under state laws, must depend on the jurisdiction under which they are incurred. The state has not seen fit to charge to the county any portion of such expenses, and they cannot be so charged without some authority of law. They must be considered as a part of the expenses attendant upon the police system of the city. The law permitting the use of the jail has no provision to the contrary." *Mixer, supra,* 425.

Further support for the defendant's position is found in the 1969 enactment of MCL 801.4a; MSA 28.1724(1), which provides:

"All charges and expenses of safekeeping and maintaining persons in the county jail charged with violations of city, village or township ordinances shall be paid from the county treasury if a district court of the first or second class has jurisdiction of the offense."

Certainly it would not have been necessary to enact this statute if the counties were already responsible for the expenses of confinement of

persons convicted of violations of city, village or township ordinances in districts of every class.[1]

At the commencement of this litigation, each of the plaintiff cities was a district control unit (MCL 600.8104; MSA 27A.8104) for a district court of the third class (MCL 600.8103[3]; MSA 27A.8103[3]) or bore an analogous relation to a retained municipal court. Since that time, each of the four plaintiff cities which had retained municipal courts has voted to become a part of the district court system and each has or will become a district control unit for a district of the third class.[2] We are in full accord with the Attorney General, who has expressed his opinion that:

"Having in mind the above statutory language [MCL 801.4a] and my previous Opinion in this regard [see footnote 3], I conclude that the expenses, including medical expenses, of confining in the county jails those persons held for violations of city, village, or township ordinances, should be paid by the city, village or township if a district court of the third class has jurisdiction of the offense, and by the county if the offense is within the jurisdiction of a district court of the first or second class." OAG 1975-1976, No. 4957, p 322 (February 25, 1976).[3]

---

[1] Plaintiffs argue that the only purpose for the enactment of MCL 801.4a; MSA 28.1724(1) was to remove from the Board of Commissioners the function of settling and allowing accounts for the expenses incurred in confining ordinance violators in first and second class districts. We find that argument utterly unpersuasive.

[2] The City of Grand Rapids was the only plaintiff city with a district court when plaintiffs' complaint was filed. MCL 600.8130(1); MSA 27A.8130(1). The City of Kentwood is the district control unit of the 62nd B district. MCL 600.8130(3); MSA 27A.8130(3). The City of Grandville and the City of Walker are the district control unit of the 59th district. MCL 600.8128a; MSA 27A.8128(1). Each of these districts is a third class district.

[3] In OAG, 1965-1966, No. 4509, p 391 (December 27, 1966), the Attorney General was asked whether cities and villages were liable for the expense of confining in the county jail persons charged with or convicted of violating city and village ordinances. In responding in the affirmative, the Attorney General stated:

"*Mixer* has not been overruled. Thus, in the absence of a statute to

On the authority of the Supreme Court's holding in *Mixer* and in light of the absence of a statute to the contrary, we affirm the circuit court's determination that defendant County of Kent is legally authorized to charge per diem fees to plaintiff cities for the confinement in the county jail of persons charged with or convicted of city ordinance violations.

We also agree with the circuit court that the practice of charging only certain cities within the county the per diem jail fees is entirely reasonable. As noted, *supra,* the plaintiff cities are district countrol units of district courts of the third class. The remaining cities, villages and townships in Kent County comprise the 63rd Judicial District, a district of the second class. MCL 600.8130(4); MSA 27A.8130(4).

In first and second class judicial districts, the county is responsible for the maintenance of the district court and two-thirds of all fines and costs resulting from the prosecution of ordinance violations must be paid to the county. Cities constituting third class judicial districts, however, maintain their own district courts[4] and keep all fines and

the contrary, the expense about which you inquire must be charged to the city or village. The rule of the *Mixer* case as to a fourth class city would be equally applicable to a home rule city. The rule would also apply to villages incorporated under the home rule act for villages." *Id.,* 392.

[4] "(1) A district of the first class is a district consisting of 1 or more counties and in which each county comprising the district is responsible for maintaining, financing and operating the district court within its respective county except as otherwise provided in this act.

"(2) A district of the second class is a district consisting of a group of political subdivisions within a county and in which the county where such political subdivisions are situated is responsible for maintaining, financing and operating the district court except as otherwise provided in this act.

"(3) A district of the third class is a district consisting of 1 or more political subdivisions within a county and in which each political subdivision comprising the district is responsible for maintaining,

costs resulting from the prosecution of ordinance violations.[5]

Moreover, plaintiff cities are not required to use the jail services provided by Kent County. As home rule cities they are authorized to provide

financing and operating the district court within its respective political subdivision except as otherwise provided in this act." MCL 600.8103; MSA 27A.8103.

[5] "Fines and costs assessed in the district court shall be paid to the clerk of the court who shall appropriate them as follows:

"(a) A fine imposed for the violation of a penal law of this state and a civil fine ordered in a civil infraction action for violation of a law of this state shall be paid to the county treasurer and applied for library purposes as provided by law.

"(b) In districts of the first and second class, costs imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state shall be paid to the treasurer of the county in which the action was commenced. In districts of the third class, costs imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state shall be paid to the treasurer of the political subdivision where the guilty plea or civil infraction admission was entered or where the trial or civil infraction action hearing took place.

"(c) In districts of the first and second class, 1/3 of all fines and costs, other than those imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state, shall be paid to the political subdivision whose law was violated and 2/3 shall be paid to the county in which the political subdivision is located. In districts of the third class, all fines and costs, other than those imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state, shall be paid to the political subdivision whose law was violated, except that where fines and costs are assessed in a political subdivision other than the political subdivision whose law was violated, 2/3 shall be paid to the political subdivision where the guilty plea or civil infraction admission was entered or where the trial or civil infraction action hearing took place and the balance shall be paid to the political subdivision whose law was violated.

"(d) In a district of the third class, if each political subdivision within the district, by resolution of its governing body, agrees to a distribution of fines and costs, other than fines imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state, differently than as provided by this section, the distribution of those fines and costs among the political subdivisions of that district shall be as agreed to. An existing agreement applicable to the distribution of fines and costs shall apply with the same effect to the distribution of civil fines and costs ordered in civil infraction actions." MCL 600.8379; MSA 27A.8379 (as amended by 1979 PA 67, effective August 1, 1979).

separate city prisons. MCL 117.4e(1); MSA 5.2078(1). Furthermore, plaintiff cities voluntarily chose to set up their own separate penal systems. MCL 117.4i(10); MSA 5.2082(10). It is clear, therefore, that, though lodged in the county jail, these prisoners are in reality city prisoners. As the Supreme Court has determined, the expenses of their lodging must be considered part of the expenses of the city police systems.[6]

In addition to challenging defendant's legal authority to charge them the jail fees, plaintiff cities argue that, if such legal authority exists, defendant should not be allowed to include in the fees any amounts representing capital expenditures. Plaintiffs rely primarily on MCL 45.16; MSA 5.291, which provides that each county "shall, at its own cost and expense, provide at the county seat thereof * * * a suitable and sufficient jail".[7] Plaintiffs concede that, if the county is legally authorized to charge jail fees, it may include items which represent "current operating expenses", including jail repair costs. MCL 46.7; MSA 5.327.

We are not persuaded that an amount representing a city's fair share of capital expenditures cannot be included in the legally authorized per diem jail fees charged by the county. The reasoning advanced by the Supreme Court in *Mixer* is fully applicable. The sole reason for the lodging of city prisoners in the county jail is the city's voluntary choice not to build its own jail despite adoption of its own penal code. To the extent that the requirements of these non-county prisoners neces-

---

[6] *Cf.* OAG 1975-1976, No. 4,957, *supra,* 321, where the Attorney General expressed his opinion that the cost of care and maintenance of prisoners of one county held in the jail of another county, MCL 801.107; MSA 28.1757, should be paid by the county which has committed such prisoners, and not by the county where the jail is physically located.

[7] But see MCL 45.16a; MSA 5.291(1).

sitate capital expenditure, therefore, the county is not prohibited from recouping such expenditures from the cities.

Plaintiff cities also argue on appeal that the court erred in denying their motion to amend their complaint. In November, 1978, plaintiffs moved to amend their December 1977 complaint, seeking to add, as parties plaintiff, one resident/taxpayer of each of the five plaintiff cities. These proposed plaintiffs were the mayors of plaintiff cities. The circuit court denied the motion, finding, *inter alia,* that the interests of the proposed plaintiffs were "at most, indirect, remote, and conjectural".

A prerequisite to a taxpayer's suit against a unit of government is the threat that the taxpayer will sustain substantial injury or suffer loss or damage as a taxpayer through increased taxation and the consequences thereof. Some special grievance must be shown. *Menendez v Detroit,* 337 Mich 476, 482; 60 NW2d 319 (1953).

The circuit court's denial of plaintiffs' motion to amend was not an abuse of discretion. *Matson v Soronen,* 57 Mich App 190, 193; 226 NW2d 52 (1974), *lv den* 394 Mich 762 (1975). The supposed loss of the proposed plaintiffs was highly speculative. It did not clearly appear from the allegations of the amended complaint that each of these taxpayers had been or would be subjected to increased taxation as a result of the county's per diem jail fees. It was incumbent on plaintiffs to set forth clearly, concisely and directly (GCR 1963, 111.9[1]) the present or prospective damages of the proposed individual plaintiffs. *Andrews v South Haven,* 187 Mich 294, 304; 153 NW 827 (1915). Having failed to do so, plaintiffs cannot complain of the denial of

leave to file their legally insufficient pleading. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 660; 213 NW2d 134 (1973).

Affirmed. No costs, a public question.