Robert D. Beall Leavenworth City Attorney 529 Delaware Leavenworth, Kansas 66048
Dear Mr. Beall:
As Attorney for the City of Leavenworth, you ask what expenses incurred by Leavenworth County should be included in determining the costs of maintaining a City Municipal Court inmate in the Leavenworth County jail. Your position is that charges to the City should include only expenses for care of inmates and should not include expenses related to personnel, utilities, repairs, depreciation, maintenance, or operation of the jail facility. On the other hand, the County's position is that all of those costs, except depreciation, should be included in determining the prisoner per diem assessed to the City. Further, we understand that jail capital expenditures are not at issue in the situation presented.
The applicable statute[1] provides:
 "The sheriff or the keeper of the jail in any county of the state shall receive all prisoners committed to the sheriff's or jailer's custody . . . by the authority of any city located in such county and shall keep them safely in the same manner as prisoners of the county until discharged in accordance with law. The county maintaining such prisoners shall receive from . . . such city compensation for the maintenance of such prisoners in an amount equal to that provided by the county for maintenance of county prisoners and provision shall be made for the maintenance of such prisoners in the same manner as prisoners of the county. The governing body of any city committing prisoners to the county jail shall provide for the payment of such compensation upon receipt of a statement from the sheriff of such county as to the amount due therefor from such city."
The issue thus involves whether the term "maintenance of prisoners" may include operation, maintenance and personnel costs related to the jail facility or only expenses directly related to prisoner care.
K.S.A. 19-1930 has been in effect, virtually unchanged, since its enactment in 1963. Unfortunately, since legislative committee minutes are not preserved for committee hearings prior to 1968, any pertinent legislative history is unavailable.
The meaning of the term "maintenance" as used is K.S.A. 19-1930 was addressed in Wesley Medical Center v. City of Wichita,[2] but only, as between the city and county, how the term pertained to the responsibility for medical expenses of an indigent prisoner. The Court recognized the legislative policy that the cost of maintenance of a prisoner should be placed on the governmental entity whose laws had been violated and under whose authority the person was actually being held as a prisoner. In holding that as the controlling factor concerning responsibility for medical expenses, the Court referred to expenses for "safekeeping and maintenance"[3] of the prisoner. That phrase hearkened back to a 1937 Kansas case[4] in which the Court in effect acknowledged that safekeeping and maintenance of a prisoner involved a properly operated facility:
 "The proper management and conduct of a jail consists of something more that merely incarcerating a prisoner and preventing a jail-break. It requires the complete supervision and adequate superintending of the entire institution. It demands, among other things, the protection of the building and its equipment, sanitation to prevent disease, the furnishing of adequate food, water, and sleeping quarters, the proper segregation of prisoners, the assurance of the best possible moral conditions, and the humane treatment of prisoners calculated to promote their reformation. These are among the statutory duties with the performance of which the sheriff is charged."[5]
Generally, the term "maintenance" can mean both "the upkeep or preservation of condition of property, including cost or ordinary repairs" and "the furnishing by one person to another for his or her support, of the means of living, or food, clothing, shelter, etc., particularly where the legal relation of the parties is such that one is bound to support the other."[6] However, since these and other comparable definitions are situation specific (e.g. in the context of a divorce proceeding), the general definitions are not particularly helpful in resolving the issue. Thus, we turn to other state decisions for what little guidance exists.
In a 1965 Wisconsin case,[7] a statute that required each city located within a county to pay for the "actual and reasonable costs of maintenance" of the city's prisoners was in issue. In determining the prisoner per diem charges, Milwaukee County included all costs of operating and maintaining the county jail. The City of Milwaukee asserted that the statutory language included only out-of-pocket expenses directly affecting prisoner keep and did not include, as claimed by the county, charges based on a cost-accounting share of salaries, heating, lighting, gas, water, insurance, supplies, capital construction, maintenance and a variety of other items. The issue on appeal was whether the items that were directly related to the maintenance and operation of the facility were to be considered as actual and reasonable costs of maintaining or keeping prisoners. The Court determined:
 "No where in the history of this problem or in any of the statutes can we find any intent on the part of the legislature to include in the cost against the city of Milwaukee the total accounting costs for operating a jail or house of correction as contended for by the county. In this respect county's argument must fail."[8]
Thus, the Court held that jail facility operation and maintenance costs should not be included in determining the prisoner per diem charged to the city. However, the Court did find that the cost of meals for city prisoners included the labor in preparing and serving food, as well as the cost of the raw food, and therefore personnel costs for food service workers was allowed in determining the prisoner per diem charges.[9]
In a subsequent Michigan case,[10] a different result was reached. At issue was whether cities were required to reimburse counties for expenses incurred in the "safekeeping and maintaining" of city prisoners. In that case, the city conceded that if the county was legally authorized to charge jail fees, then current operating expenses, including jail repair costs, could be included as a prisoner maintenance expense. However, the city contested the inclusion of capital expenditures. The Court stated:
 "We are not persuaded that an amount representing a city's fair share of capital expenditures cannot be included in the legally authorized per diem jail fees charged by the county. . . . The sole reason for the lodging of city prisoners in the county jail is the city's voluntary choice not to build its own jail despite adoption of its own penal code. To the extent that the requirements of these non-county prisoners necessitate capital expenditure, therefore, the county is not prohibited from recouping such expenditures from the cities."[11]
In a recent Michigan case,[12] a township protested paying prisonerper diem fees charged by the county for housing and maintaining township ordinance violators. The Court stated that the issue had been "dispositively addressed" in its earlier case where the Court held "that a county is authorized to charge cities in third-class judicial districts a per diem fee to house and maintain ordinance violators in the county jail."[13] The Court further acknowledged that "expenses such as personnel, security, food, clothing, medical treatment, and so forth would constitute the expenses of safekeeping and maintaining prisoners on a daily basis."[14]
A 1991 Iowa case[15] involved the allocation and determination of costs for detaining city prisoners held by the county. The statute in question required cities to reimburse counties for the "safekeeping and maintenance" of city prisoners held in county jails. The county took the position that administrative costs, such as personnel costs, should be included in computing an average daily cost of providing services to prisoners; the city disagreed. The Court held:
 "We believe the legislature intended that the County should be reimbursed for all its expenses. `Expenses' should include all costs required for the sheriff, as keeper of the jail, to perform the statutory duties [regarding safekeeping and maintenance of city prisoners]. The County also incurs administrative expenses, such as the salaries of a sheriff, deputy sheriff and other employees, in carrying out its statutory duties. Therefore we hold that the City must reimburse the County for the appropriate pro rata portion of the County's administrative expenses."[16]
In our opinion, in determining the appropriate prisoner per diem a county may charge a city for the maintenance of city prisoners, the county may include expenses that relate to personnel, administration, facility operation and maintenance as well as direct prisoner expenses. We base this conclusion on a number of considerations.
First, the county must not merely maintain city prisoners; the county must maintain city prisoners in some facility and "in the same manner as prisoners for the county."[17] Maintenance of city prisoners necessarily implies the administration, operation and maintenance of a facility in which to maintain the prisoners.
Second, based on the sentiments expressed in Day v. Board ofCommissioners of Cowley County and Wesley Medical Center v. City ofWichita, we believe the Kansas Supreme Court would permit a county to include jail personnel, administrative, operation and maintenance expenses, as well as direct prisoner expenses, in determining the appropriate prisoner per diem to charge a city for maintenance of city prisoners.
Third, we believe that the cases from Michigan and Iowa are the better reasoned cases and thus approve their rationale and conclusions that expenses of operating, including jail repair, administration, personnel and security as well as direct prisoner care costs, are appropriate for county use in determining the prisoner per diem to be charged other governmental entities.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
[1] K.S.A. 19-1930(a).
[2] 237 Kan. 807 (1985).
[3] Id. at p. 815.
[4] Day v. Board of Commissioners of Cowley County, 146 Kan. 492
(1937).
[5] Id. at 495-96.
[6] Black's Law Dictionary 953 (6th ed. 1990).
[7] City of Milwaukee v. County of Milwaukee, 133 N.W.2d 393 (Wisc. 1965).
[8] Id. at 398.
[9] Id.
[10] City of Grand Rapids v. County of Kent, 292 N.W.2d 475 (Mich. 1980); subsequently upheld in County of Wayne v. Charter Townshipof Plymouth, 612 N.W.2d 440 (Mich. 2000).
[11] 292 N.W.2d at 479.
[12] County of Wayne v. Charter Township of Plymouth, supra, note 10.
[13] Id. at 441-442.
[14] Id. at 483-484.
[15] Woodbury County v. City of Sioux City, 475 N.W.2d 203 (Iowa 1991).
[16] Id. at 209.
[17] K.S.A. 19-1930.